**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| MINIMALLY INVASIVE SURGERY HOSPITAL, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION ) ) No. 08-2637-KHV |
| CONNIE ARNOLD, et al., | ) ) |
| Defendant/Third Party Plaintiffs, | ) ) |
| v. | ) ) |
| DR. WANDA KANIEWSKI, et al., | ) ) |
| Third Party Defendants. | ) ) |

**MEMORANDUM AND ORDER**

On November 4, 2008, in state court, Minimally Invasive Surgery Hospital, Inc. ("MISH") and The Institute For Advanced Bariatric Surgery, Inc. ("The Institute") filed suit against Connie Arnold to recover amounts due for medical services. On December 16, 2008, Arnold filed a notice of removal, asserting diversity jurisdiction under 28 U.S.C. § 1332. See Notice Of Removal (Doc. #1) filed December 16, 2008. This matter comes before the Court on Plaintiff/Third Party Defendants' Joint Motion To Remand (Doc. #53) filed March 10, 2009. For reasons stated below, the Court sustains the motion.

**Procedural Background**

In the original petition, MISH and The Institute alleged that Arnold owed $76,423.66 for services, materials and facilities relating to gastric bypass surgery which The Institute performed on February 20, 2007. See Petition ¶¶ 6, 10, attached to Notice Of Removal (Doc. #1). Plaintiffs claimed that Arnold owed $11,400.00 to The Institute for physician services and $65,023.66 to

MISH for hospital facilities, materials and services. See id. ¶¶ 8-9. Plaintiffs claimed that Arnold agreed to pay those amounts plus interest at the rate of 18 per cent per annum and attorney's fees and expenses. See id. ¶ 5. Plaintiffs sought damages in the amount of the unpaid balances plus interest, attorney's fees and expenses. See id. at 3.

On December 16, 2008, Arnold filed a notice of removal to this Court. See Doc. #1.

Seven days later, on December 23, 2008, Arnold filed an answer which asserted counterclaims for medical malpractice, negligent hiring, negligent retention, negligent supervision, negligence and fraud and sought damages in excess of $75,000. See Answer, Counter Claim and Third Party Complaints ("Counterclaim") (Doc. #3). In addition, Arnold joined her husband as a third party plaintiff, and together they asserted claims against Dr. Wanda Kaniewski and Dr. Paramjeet Sabharwal for negligence, fraud and loss of consortium. See id.[1]

On March 5, 2009, plaintiffs filed an amended complaint which alleges that Arnold owes $67,923.66 for services, materials and facilities relating to gastric bypass surgery on February 20, 2007. See Amended Complaint (Doc. #45) ¶¶ 6, 10. Specifically, plaintiffs claim that after credit for certain payments, Arnold owes $2,900.00 to The Institute and $65,023.66 to MISH. See id. ¶¶ 8-9. Plaintiffs claim that Arnold agreed to pay those amounts plus interest at the rate of 18 per cent per annum and attorney's fees and expenses. See id. ¶ 5. Plaintiffs seek damages in the amount of the unpaid balances plus interest, attorney's fees and expenses. See id. at 3.

---

[1] On March 4, 2009, the Arnolds filed amended counterclaims and third party claims. See Doc. #44. The amendments do not change the nature of their claims. See id.

**Legal Standards**

A civil action is removable only if plaintiffs originally could have brought the action in federal court. See 28 U.S.C. § 1441(a). The Court is required to remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against federal jurisdiction. See Frederick & Warinner v. Lundgren, 962 F. Supp. 1580, 1582 (D. Kan. 1997) (citing Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)). The rule is inflexible and without exception, and requires the Court to deny its jurisdiction in all cases where such jurisdiction does not affirmatively appear in the record. See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982). Accordingly, the Court must strictly construe the federal removal statute, see Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982), and resolve any doubts concerning removability in favor of remand. See J.W. Petroleum, Inc. v. R.W. Lange, 787 F. Supp. 975, 977 (D. Kan. 1992).

The burden is on defendant, i.e. the party requesting removal, to demonstrate that the Court has jurisdiction. See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995). Arnold asserts diversity jurisdiction under 28 U.S.C. § 1332(a), which provides original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).[2] Where the

---

[2] The parties do not dispute complete diversity. According to the pleadings, the Arnolds are residents of Missouri, MISH and The Institute are Kansas corporations with their principal places of business in Kansas and Drs. Kaniewski and Sabharwal are residents of Kansas. See, e.g., Depex Reina 9 P'ship v. Tex. Int'l Petroleum Corp., 897 F.2d 461, 463 (10th Cir. 1990) (diversity jurisdiction attaches when all parties on one side of different citizenship from all parties on other side).

amount in controversy is not apparent from the face of plaintiffs' state court petition, a removing defendant must prove by a preponderance of evidence jurisdictional facts which show that the amount in controversy may exceed $75,000. See McPhail v. Deere & Co., 529 F.3d 947, 953 (10th Cir. 2008). Defendant may demonstrate such facts in various ways including (but not limited to) contentions, interrogatories or admissions in state court; calculation from plaintiffs' allegations; reference to plaintiffs' informal estimates or settlement demands; and evidence regarding how much it would cost to satisfy plaintiffs' demands. See id. at 954 (quoting Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 541-42 (7th Cir. 2006) (citations omitted)).

## Analysis

Plaintiffs assert that the Court should remand because the amount in controversy does not exceed $75,000. Specifically, plaintiffs contend that the MISH claim is separate from The Institute claim and that Arnold cannot aggregate their claims to satisfy the jurisdictional requirement. Arnold contends that the jurisdictional minimum is satisfied because (1) with interest and attorney's fees, the MISH claim exceeds $75,000; (2) MISH and The Institute are alter egos and the Court should aggregate their claims; and (3) the value of Arnold's counterclaims exceeds $75,000.

**I.     The MISH Claim**

Arnold contends that standing alone, with interest and/or attorney's fees, the MISH claim exceeds $75,000. MISH seeks damages of $65,023.66 plus interest, attorney's fees and expenses and court costs. See Petition at 3; Amended Complaint (Doc. #45) at 3.[3] If one plaintiff's claim satisfies the amount in controversy, the Court may exercise supplemental jurisdiction over the claims

---

[3] The petition and amended complaint seek the same amount from MISH. Thus the Court need not decide which document applies to the jurisdictional determination.

of another plaintiff in the same case or controversy, even if the latter claim is for less than the jurisdictional minimum, where the other elements of jurisdiction are present. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 549 (2005). Thus, if the MISH claim exceeds $75,000, the Court may exercise jurisdiction over both claims.[4]

### A. Interest

Arnold contends that with interest, the MISH claim exceeds $75,000. By its terms, however, Section 1332(a)(1) excludes interest from the jurisdictional minimum requirement. See 28 U.S.C. § 1332(a)(1).[5] To the extent contractually agreed upon or statutorily mandated interest arises solely from delay in payment – as opposed to a penalty – the Court does not include it in the amount in controversy. See Frederick & Warinner v. Lundgren, 962 F. Supp. 1580, 1584 (D. Kan. 1997).

Arnold asserts that plaintiffs seek interest as a contractual penalty. See Defendant's Response (Doc. #65) at 5. In support of this assertion, Arnold cites the conditions of admission form which she signed on February 20, 2007, which states as follows:

> The undersigned agree[s] if this account, upon default, is placed with a collection agency or attorney for recovery shall have added to the outstanding balance a 17% penalty.

---

[4] At this point, the Court assumes without deciding that the claims of MISH and The Institute arise out of the same case or controversy for purposes of exercising supplemental jurisdiction under Exxon.

[5] Section 1332(a) states as follows:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
 (1) citizens of different States;
 * * *

28 U.S.C. § 1332(a).

Exhibit B to Defendant's Response (Doc. #65). Plaintiffs' complaint, however, does not seek damages based on a 17 per cent penalty. See Amended Complaint (Doc. #45). Plaintiffs allege that on January 3, 2007, Arnold agreed to pay interest at the rate of 18 per cent per annum on any balance unpaid after 60 days. See Amended Complaint (Doc. #45) ¶ 5. The patient registration form which Arnold signed on January 3, 2007 states as follows:

> I understand that the office reserves the right to bill finance charges at 1½% per month on patient's balances unpaid after 60 days.

Exhibit C to Defendant's Response (Doc. #65). Based on the amended complaint and the patient registration form, it appears that plaintiffs seek contractually agreed upon interest based on delay of payment. The record does not suggest that plaintiffs seek a contractual penalty. Accordingly, the Court will not consider interest in determining the amount in controversy. See, e.g., Firstar Bank, NA v. West-Anderson, No. 02-2224-CM, 2003 WL 21313849, at *4 (D. Kan. April 22, 2003).

### B. Attorney's Fees

Arnold asserts that with attorney's fees, the MISH claim exceeds $75,000. Where a litigant has a contractual right to recover attorney's fees, the Court may include a reasonable estimate of those fees in determining the amount in controversy. See Gerig v. Krause Publ'ns, Inc., 58 F.Supp.2d 1261, 1264 (D. Kan. 1999). Arnold asserts that under Gerig, the Court should find as a matter of law that with attorney's fees, the MISH claim exceeds $75,000. See Defendant's Response (Doc. #65) at 6-7.

In Gerig, plaintiff brought suit in federal court for breach of contract and copyright infringement. Plaintiff claimed liquidated damages ranging from $52,504.20 to $63,404.50 plus attorney's fees. See Gerig, 58 F.Supp.2d at 1266. Defendant moved to dismiss arguing, inter alia, that the amount in controversy did not exceed $75,000. In deciding whether the amount in

-6-

controversy satisfied the jurisdictional minimum, the district court found that the amount of plaintiff's claim controlled if it was apparently made in good faith. See Gerig, 58 F.Supp.2d at 1264. The district court found that to justify dismissal, it must appear "to a legal certainty" that the claim was really for less than the jurisdictional amount. Id. The district court concluded that it had diversity jurisdiction because plaintiff made the claim in good faith and it did not appear to a legal certainty that plaintiff's claim – augmented with an award for reasonable attorneys fees – was really less than the jurisdictional amount. See id.

Gerig is distinguishable because in that case, plaintiff filed suit in federal court. Where plaintiff brings suit in federal court, his or her allegation that the amount in controversy exceeds $75,000 will suffice unless defendant can prove "to a legal certainty" that plaintiff cannot recover the alleged amount. McPhail, 529 F.3d at 953 (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938); Woodmen of World Life Ins. Soc'y v. Manganaro, 342 F.3d 1213, 1216-17 (10th Cir. 2003)). In Gerig, plaintiff alleged facts sufficient to establish that the amount in controversy exceeded $75,000 and defendant did not show to a legal certainty that she could not recover the alleged amount. Here, in contrast, plaintiff filed suit in state court and the amount in controversy was not apparent from the face of the state court petition. Therefore, to establish federal jurisdiction for removal purposes, Arnold must prove by a preponderance of evidence jurisdictional facts which show that the amount in controversy may exceed $75,000. See McPhail, 529 F.3d at 953.[6]

---

[6] This discrepancy in treatment of plaintiffs and defendants may be justified by the historical tradition that plaintiff is the master of the forum and empowered to choose the court system and venue in which the litigation will proceed, or perhaps by the pressures created by the expanding dockets of federal courts. See 14C Charles Alan Wright, Arthur R. Miller & Edward H.
(continued...)

As noted, MISH seeks damages of $65,023.66 plus attorney's fees. To meet the jurisdictional minimum, Arnold must show by a preponderance of evidence that MISH will incur almost $10,000 in reasonable attorney's fees. Arnold, however, presents no evidence regarding the amount of attorney's fees which MISH will incur. The Court acknowledges that at this stage in the litigation, it may be difficult for defendant to obtain evidence regarding the amount of plaintiff's attorney's fees. In McPhail, the Tenth Circuit noted that before responding to a motion to remand, defendant could request time for limited discovery. It stated as follows:

> [T]o the extent that a defendant must rely on the federal discovery process to produce this evidence (perhaps because there was no time to do so in state court) he may ask the court to wait to rule on the remand motion until limited discovery has been completed . . . .

529 F.3d at 954. Arnold has not requested time to conduct discovery on the attorney fee issue.[7] On this record, Arnold has not shown that with attorney's fees, the MISH claim exceeds $75,000.

---

[6](...continued)
Cooper, Federal Practice & Procedure § 3725 (3d ed. 2009).

[7] Theoretically, a court could take judicial notice that a represented plaintiff would incur some amount attorney's fees, but this not the case. MISH and The Institute share attorneys and presumably share their fees. The Court has no information regarding any fee sharing agreement. If MISH and The Institute share fees equally, their attorney's fees must total $20,000 to bring MISH's claim over $75,000. The Court cannot conclude as a matter of law that attorney's fees on plaintiffs' combined collection claims will exceed $20,000.

In support of her argument that the amount in controversy exceeds $75,000, Arnold cites Lininger v. State Farm Fire & Cas. Co., 958 F. Supp. 519 (D. Kan. 1997). See Defendant's Response (Doc. #65) at 6-7. In that case, plaintiff brought suit in state court for $34,710.13 plus interest, costs and attorney's fees. Defendant removed the case to federal court, where – at that time – the amount in controversy requirement was $50,000. In ruling on plaintiff's motion to remand, the district court found that at such an early stage in the litigation, it could not conclude that a reasonable attorney's fee would be less than $16,000. See Lininger, 958 F. Supp. at 520. Lininger did not discuss what standard applies for a removing defendant to establish the jurisdictional amount. Lininger was decided before McPhail and did not require defendant to prove jurisdictional facts by a preponderance of evidence.

-8-

**II.    Alter Egos**

Arnold urges the Court to aggregate the claims of MISH and The Institute because they are alter egos. See Defendant's Response (Doc. #65) at 8-10. Ordinarily, in multiple plaintiff diversity cases, each plaintiff must individually satisfy the amount in controversy requirement. See Lovell v. State Farm Mut. Auto Ins. Co., 466 F.3d 893, 897 (10th Cir. 2006) (citing Snyder v. Harris, 394 U.S. 332, 335 (1969) and Lonnquist v. J.C. Penney Co., 421 F.2d 597, 599 (10th Cir. 1970)). The Court may aggregate plaintiffs' claims only when they "unite to enforce a single title or right in which they have a common and undivided interest." Lovell, 466 F.3d at 897 (quoting Snyder, 394 U.S. at 335).

In support of her argument, Arnold presents evidence that MISH and The Institute have the same registered agent, same mailing address and same principal place of business. Arnold asserts that on information and belief, she believes that (1) the businesses are run by Drs. Sabharwal and Kaniewski, who are husband and wife; (2) the businesses, along with Drs. Sabharwal and Kaniewski, make up a small outpatient surgery center which has a total of 14 employees; (3) the businesses operate out of a building owned by N.M.S., LLC, which lists Dr. Sabharwal as the registered agent; and (4) the businesses and Drs. Sabharwal and Kaniewski are alter egos with all financial obligations and benefits ultimately running to Drs. Sabharwal and Kaniewski. See Defendant's Response (Doc. #65) at 9. Arnold also asserts that plaintiffs' website, http://www.iabsobesitysurgery.com, refers to the two businesses as one;[8] lists Dr. Kaniewski as the Director of the Bariatric Surgery Program at MISH; and lists Dr. Sabharwal as "our Chief Executive

---

[8]   The website states that MISH and The Institute are *"an* American Society of Bariatric Surgery Center of Excellence." Exhibit H to Defendant's Response (Doc. #65) (emphasis added).

Officer" and states that "[The Institute at MISH] was a long goal concept of his." Defendant's Response (Doc. #65) at 9 (quoting Exhibit I thereto).

Under Kansas law, courts will disregard corporate identities "when there is such dominion of finances, policy, and practices that the controlled corporation has no separate mind, will, or existence of its own and is but a business conduit for its principal." Dean Operations, Inc. v. One Seventy Assoc., 257 Kan. 676, 681, 896 P.2d 1012, 1016 (1995). In such situations, the Court may find that one corporation is an alter ego of another corporation and hold it liable for the acts of the other corporation. See id.[9]

As an initial matter, Arnold has not shown by a preponderance of evidence facts which demonstrate that MISH and The Institute are alter egos of one another.[10] Moreover, even if Arnold

---

[9] In determining whether a parent corporation is the alter ego its subsidiary, the Court considers the following factors:

> (1) whether the parent corporation owns all or a majority of the capital stock of the subsidiary; (2) whether the corporations have common directors or officers; (3) whether the parent corporation finances the subsidiary; (4) whether the parent corporation subscribed to all of the capital stock of the subsidiary or otherwise causes its incorporation; (5) whether the subsidiary has grossly inadequate capital; (6) whether the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) whether the subsidiary has substantially no business except with the parent corporation, or no assets except those conveyed to it by the parent corporation; (8) whether in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division; (9) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and (10) whether the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

Dean Operations, 257 Kan. at 681, 896 P.2d at 1016.

[10] At most, Arnold alleges facts which may be sufficient to state a claim for liability based on an alter ego theory.

-10-

presented such evidence, she has not shown that because the corporations are alter egos, they have such a "common and undivided interest" that the Court may aggregate their claims to establish the amount in controversy. Arnold does not cite – and the Court is unaware of – any cases which have used an alter ego theory to combine claims in this way. On this record, Arnold has not shown by a preponderance of evidence that MISH and The Institute "unite to enforce a single title or right in which they have a common and undivided interest." Lovell, 466 F.3d at 897 (quoting Snyder, 394 U.S. at 335). The Court will not aggregate their claims to meet the amount in controversy requirement.

## III.   Arnold's Counterclaims

Arnold asserts that her counterclaims satisfy the amount in controversy requirement. As noted, on December 23, 2008, seven days after Arnold removed the case to this Court, she asserted counterclaims against MISH and The Institute for medical malpractice, negligent hiring, negligent retention, negligent supervision, negligence and fraud, seeking damages in excess of $75,000. See Counterclaim (Doc. #3) ¶ 11. Most cases have found that in the removal context, courts should not consider counterclaims in determining the jurisdictional amount in controversy. See, e.g., FLEXcon Co. v. Ramirez Commercial Arts, Inc., 190 F.Supp.2d 185, 186-87 (D. Mass. 2002); Maloan v. Bancorpsouth Bank, Inc., No. 01-1366, 2002 WL 1397266, at **2-4 (W.D. Tenn. March 29, 2002); Kaplan v. Computer Sciences Corp., 148 F.Supp.2d 318, 320-21 (S.D.N.Y. 2001).[11] The Court need

---

[11]   In Geoffrey E. Macpherson Ltd. v. Brinecell, Inc., 98 F.3d 1241, 1245 n.2 (10th Cir. 1996), the Tenth Circuit indicated that in an original jurisdiction action, a court may consider the value of a compulsory counterclaim to establish the amount in controversy requirement. Cases in this Court, however, have found that the same rationale does not apply in removed cases. See Dresser-Rand v. N. Natural Gas Co., No. 99-4165-SAC, 2000 WL 286733, at *2 (D. Kan. Jan. 19, 2000) (Brinecell considered original jurisdiction and court would not consider counterclaim in
(continued...)

not decide the issue in this case, because Arnold did not file her counterclaims until after she filed the notice of removal. The Court determines the amount in controversy as of the date of removal. See Dresser-Rand v. N. Natural Gas Co., No. 99-4165-SAC, 2000 WL 286733, at *2 (D. Kan. Jan. 19, 2000); Leader Mortg., 1998 WL 781225 at *2; Martin Pet Prods. (U.S.), Inc. v. Lawrence, 814 F. Supp 56, 58 (D. Kan. 1993). Because Arnold filed her counterclaims after she filed her notice of removal, the Court does not consider them in determining the amount in controversy. See Dresser-Rand, 2000 WL 286733 at *2;  Leader Mortg., 1998 WL 781225 at *2; Martin Pet Prods., 814 F. Supp at 58; see also Thrash v. New England Mut. Live Ins. Co., 534 F. Supp.2d 691, 697 (S.D. Miss. 2008); Warren Loveland v. Keycorp Inv. L.P., No. 05-C-162-C, 2005 WL 1427707, at *3 (W.D. Wis. June 17, 2005).[12]

**IT IS THEREFORE ORDERED** that Plaintiff/Third Party Defendants' Joint Motion To Remand (Doc. #53) filed March 10, 2009 be and hereby is **SUSTAINED.** The case is hereby

---

[11](...continued)
removal context); Leader Mortg. Co. v. Earel, No. 98-2302-GTV, 1998 WL 781225, at *2 (D. Kan. Nov. 4, 1998) (in removal context, plaintiff disadvantaged by considering counterclaim value because plaintiff chose state court forum).

[12]   Arnold asserts that if the Court remands the case, it should sever her counterclaims under Rule 21, Fed. R. Civ. P., and allow them to proceed separately in this Court. See Defendant's Response (Doc. #65) at 14-15. Rule 21 provides as follows:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21. Arnold makes a convoluted argument that before the Court can remand, it must determine that Arnold's counterclaims are not compulsory and that such finding will allow the Court to sever the counterclaims and permit them to move forward in this Court. See Defendant's Response (#65) at 14. The Court disagrees with Arnold's analysis. The Court makes no findings whether the counterclaims are compulsory and expresses no opinion whether Arnold can or should file them as a separate lawsuit in this Court.

remanded to the District Court of Johnson County, Kansas.

     Dated this 30th day of June, 2009 at Kansas City, Kansas.

                                                      s/ Kathryn H. Vratil  
                                                      KATHRYN H. VRATIL  
                                                      United States District Judge